Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY BRUCKNER,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>SUNWORKS, INC., CHARLES CARGILE, DANIEL GROSS, RHONE RESCH, JUDITH HALL, and STANLEY SPEER,<br><br>　　　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

　　　　Plaintiff Gary Bruckner ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

# NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Sunworks, Inc. ("Sunworks" or the "Company") and the members of Sunworks' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Sunworks will be acquired by The Peck Company Holdings, Inc. ("Peck") through its wholly owned subsidiary Peck Mercury, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On August 10, 2020, Sunworks and Peck issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated August 10, 2020 (the "Merger Agreement") to sell Sunworks to Peck. Under the terms of the Merger Agreement, each holder of Sunworks common stock will receive 0.185171 shares of Peck common stock for each share of Sunworks common stock that they own (the "Merger Consideration"). Upon closing of the Proposed Transaction, Sunworks stockholders will own approximately 36.54%, and Peck stockholders will own approximately 63.46%, of the combined company.

3. On October 15, 2020, Sunworks filed a Definitive Proxy Statement on Schedule 14A ("Proxy Statement") with the SEC. The Proxy Statement, which recommends that Sunworks stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's and Peck's financial projections, which are ***wholly omitted*** from the Proxy Statement; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Holthouse Carlin & Van Trigt LLP ("HCVT"); and (iii) HCVT's and Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Sunworks' public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Sunworks.

9. Defendant Sunworks is a Delaware corporation, with its principal executive offices located at 1030 Winding Creek Road, Suite 100, Roseville, California 95678. The Company is a premier provider of high-performance solar power systems. Sunworks' common stock trades on the NASDAQ Capital Market under the ticker symbol "SUNW."

10. Defendant Charles Cargile ("Cargile") has been Chairman of the Board since January 2020, Chief Executive Officer ("CEO") of the Company since April 2017, and a director of the Company since September 2016.

11. Defendant Daniel Gross ("Gross") has been a director of the Company since March 2018.

12. Defendant Rhone Resch ("Resch") has been a director of the Company since November 2016.

13. Defendant Judith Hall ("Hall") has been a director of the Company since October 2019.

14. Defendant Stanley Speer ("Speer") has been a director of the Company since May 2018.

15. Defendants identified in paragraphs 10-14 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

16. Peck is a Delaware corporation, with its principal executive offices located at 4050 Williston Road, #511, South Burlington, Vermont 05403. Peck is one of the largest commercial solar engineering, procurement and construction ("EPC") companies in the country and is expanding across the Northeastern United States.

17. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Peck.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

18. Sunworks provides photovoltaic ("PV") based power systems for the agricultural, commercial, industrial ("ACI"), public works, and residential markets in California, Nevada,

Massachusetts, Oregon, New Jersey and Hawaii, with direct sales and/or operations personnel in California, Massachusetts, and Oregon.

19.  Through its operating subsidiaries, the Company designs, arranges financing, integrates, installs, and manages systems ranging in size from 2 kilowatts for residential projects to multi megawatt systems for larger ACI and public works projects.  ACI installations have included installations at office buildings, manufacturing plants, warehouses, service stations, churches, and agricultural facilities such as farms, wineries, and dairies.  Public works installations have included school districts, local municipalities, federal facilities and higher education institutions.  Sunworks provides a full range of installation services to its solar energy customers including design, system engineering, procurement, permitting, construction, grid connection, warranty, system monitoring and maintenance.

20.  On August 10, 2020, Sunworks announced its second quarter 2020 financial results, reporting net loss of $1.5 million, or $0.09 per basic and diluted share, compared to a net loss of $6.7 million, or $0.60 per basic and diluted share in the first quarter of 2020; and operating loss of $1.3 million, compared to operating loss of $6.5 million in the previous quarter of 2020.  Defendant Cargile commented on the results, stating:

> Our second quarter 2020 results reflect our effort to manage operations while dealing with the impact COVID-19 has had on Sunworks' employees, customers, partners, and other stakeholders.  We are proud of our team's ability to continue driving revenue and gross margin improvements, while reducing our operating expenses in this difficult business environment.  Additionally, our ability to maximize our cash position was augmented by the PPP loan which provided a welcome increase in our overall cash balance.  Since we were able to leverage the PPP loan to successfully maintain a level of headcount required for effective field operations, we anticipate the majority of the $2.8 million will be forgiven.  As we head into the third quarter of 2020, we are focused on sustaining our cash balance and increasing our backlog by winning new projects, while continuing to minimize our overhead costs.
>
> We have seen marked improvement in the operating environment subsequent to the end of the second quarter, although operational limitations and challenges as a result of COVID persist.  Since the end of the quarter, we have been awarded a follow-on public works project totaling $3 million, a follow-on project of almost $2 million with

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

one of our large agriculture customers, and an increase of residential sales in both Northern and Southern California. We are encouraged by these developments and will continue to prudently navigate through the challenges of the current environment as we work to advance the recently announced business combination with The Peck Company.

**The Proposed Transaction**

21. On August 10, 2020, Sunworks and Peck issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> SOUTH BURLINGTON, Vt. and ROSEVILLE, Calif., Aug. 10, 2020 -- The Peck Company Holdings, Inc. (NASDAQ: PECK) ( "Peck"), a leading commercial solar engineering, procurement and construction (EPC) company and Sunworks, Inc. (NASDAQ: SUNW) ("Sunworks"), a provider of solar power solutions for agriculture, commercial and industrial ("ACI"), public works and residential markets, today announced that they have entered into a definitive agreement under which Peck will acquire Sunworks in an all-stock transaction, pursuant to which each share of Sunworks common stock will be exchanged for 0.185171 shares of Peck common stock (subject to certain adjustments). Assuming no adjustments, Sunworks' stockholders would receive an aggregate of approximately 3,079,207 shares of Peck common stock, representing approximately 36.54% of Peck common stock outstanding after the merger.
>
> **Merger Rationale and Highlights**
>
> - Combination creates a national leader with a coast-to-coast presence poised to capitalize on significant cost synergies.
>
> - Improves scale and strengthens national presence, with pro forma revenue of $88 million if the companies had been combined in 2019, and a combined backlog of $76.8 million if the companies had been combined as of June 30, 2020.
>
> - Management has identified approximately $6 million in anticipated annualized cost synergies, including supply chain management leverage, redundant public company costs and various operating expenses.
>
> - The transaction is expected to be accretive to earnings and free cash flow after integration synergies have been implemented.
>
> - Combined company will have significantly expanded addressable market to leverage Sunworks' core capabilities in agriculture and public works.
>
> - Combination leverages Peck's strategic partnership with GreenBond Advisors to provide project development and financing to fuel growth and solar project

- 6 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- ownership improving the conversion of Sunworks' pipeline and expanding its addressable market.

- Peck and Sunworks installed a combined 62,973kW in 2019, which would rank 41st overall and would be the 16th largest EPC contractor based on the latest Sun Power World ranking list.

**Management Commentary**

Jeffrey Peck, Chairman of the Board and Chief Executive Officer of Peck, commented, "This is a transformational combination, leveraging the respective strengths of the two organizations and creating a national leader in the fast-growing and resilient solar energy industry. It provides Peck expansion, scale, an enhanced financial profile and a stronger platform from which we can continue to build more solar projects. Our integration with Sunworks will extend our presence to the west coast and broaden our offerings to agriculture and public works. The transaction solidifies our three-pronged growth strategy that we announced a year ago when we listed on Nasdaq through a SPAC merger. Since we have been public, we (1) delivered organic growth of revenue from $16 million to $28 million in the first year, (2) partnered with GreenBond Advisors to access capital that provides EPC revenue as well as asset ownership in the solar projects we build for the partnership, and now (3) we are delivering on the third prong of our strategy with an exciting accretive acquisition. We have been focused on executing these important initiatives for our shareholders and expect the acquisition of Sunworks to provide many more opportunities for long term growth and profitability."

Chuck Cargile, Chairman of the Board and Chief Executive Officer of Sunworks, added, "By joining with Peck, our vision for spreading clean solar energy throughout the U.S. is amplified and expanded. Peck has demonstrated the ability to grow revenue and maintain profitability, and we believe that the combination of our teams, customers, projects and partners will materially accelerate revenue growth and earnings. Peck's strong partnership with GreenBond Advisors will allow us to offer financing to a broader range of customers and increase our addressable market. Additionally, our expanded scale will enable us to source solar panels and equipment through Peck's established relationships at lower costs, benefiting our profit margins. Being part of Peck's platform is exciting, and in the best interest of Sunworks shareholders, customers, business partners and employees."

**Transaction Details**

The transaction is expected to close during the fourth quarter of 2020, subject to approval by shareholders of both companies and other customary closing conditions.

The Board of Directors of Peck and Sunworks have each unanimously voted in favor of the definitive transaction agreement.

As part of the agreement, after the transaction closes, Jeff Peck will continue as Chairman of the Board and Chief Executive Officer of the combined company. The Board of Directors of the combined company will be comprised of four members of

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the Peck Board of Directors and three members appointed by the Sunworks Board of Directors. Because the combined company will be in competition with SunPower Corporation in some markets, Doug Rose, who is also a Vice President at SunPower Corporation, has resigned from the Board of Directors of Peck to avoid conflicts of interests.

**Insiders' Interests in the Proposed Transaction**

22. Sunworks insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Sunworks.

23. Notably, certain Company insiders will secure positions for themselves with the combined company. Specifically, the Peck board will be expanded to add three directors who will be designated by Sunworks' Board, which is expected to include defendants Gross, Resch, and Hall. In addition, the Proxy Statement provides that it is possible that certain officers of Sunworks may continue their employment with Peck if the Proposed Transaction is consummated. *See* Proxy Statement at 143.

**The Proxy Statement Contains Material Misstatements or Omissions**

24. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Sunworks' stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

25. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning, among other things: (i) the Company's and Peck's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, HCVT; and (iii) HCVT's and Company insiders' potential conflicts of

interest. Accordingly, Sunworks stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Sunworks' and Peck's Financial Projections***

26.     The Proxy Statement omits material information regarding Sunworks and Peck's financial projections.

27.     For example, the Proxy Statement sets forth:

> In connection with HCVT's opinion, HCVT, with Sunworks' approval . . . reviewed the following documents and information prepared and/or provided by the management of Sunworks to HCVT:
>
> * * *
>
> certain information relating to the historical, current and future operations, financial condition and prospects of Sunworks and Peck including, and in the case of Sunworks, internal financial projections (and adjustments thereto) prepared by the management of Sunworks relating to Sunworks for the fiscal years ending 2020 through 2025 and cash flow projections for the 13 weeks through October 18, 2020.

*Id.* at 132.

28.     The Proxy Statement, however, **wholly omits** the financial projections for both the Company and Peck, including, in the case of Sunworks, internal financial projections (and adjustments thereto) prepared by the management of Sunworks relating to Sunworks for the fiscal years ending 2020 through 2025 and cash flow projections for the 13 weeks through October 18, 2020.

29.     Additionally, the Proxy Statement fails to disclose the "estimates of cost and revenue synergies and other pro forma effects, including the costs to achieve such synergies and other pro forma effects, referred to as the estimated synergies, that Peck could achieve after completion of the Merger" that "Peck's management prepared and provided to the Peck Board, members of Sunworks management and the Sunworks Board." *Id.* at 141.

30. The omission of this material information renders the statements in the "Opinion of Sunworks' Financial Advisor" and "Certain Estimated Synergies" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning HCVT's Financial Analyses***

31. The Proxy Statement omits material information regarding HCVT's financial analyses.

32. The Proxy Statement describes HCVT's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of HCVT's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Sunworks' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on HCVT's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

33. With respect to HCVT's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) as set forth above, the internal financial projections (and adjustments thereto), prepared by the management of Sunworks and provided to HCVT, for fiscal years ending 2020 through 2025, including the Company's unlevered free cash flows and the line items underlying the unlevered free cash flows; (ii) Sunworks' projected EBITDA for 2025; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 11.0% to 13.0%; and (iv) the implied per share range resulting from the analysis.

34. Additionally, the Proxy Statement sets forth that "for the purpose of the discounted cash flow analysis, HCVT disregarded any benefit from the Company's net operating loss balances, which were accounted for separately in the implied range of per share consideration and in the enterprise value analysis." *Id*. at 140. The Proxy Statement fails, however, to disclose any benefit from the Company's net operating loss balances.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

35. Without such undisclosed information, Sunworks stockholders cannot evaluate for themselves whether the financial analyses performed by HCVT were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which HCVT's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

36. The omission of this material information renders the statements in the "Opinion of Sunworks' Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning HCVT's and Company Insiders' Potential Conflicts of Interest***

37. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by HCVT and Company insiders.

38. For example, the Proxy Statement fails to disclose whether HCVT provided any past financial advisory or financing services to the Company and the fees received for such services.

39. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

40. Additionally, the Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

41. For example, the Proxy Statement sets forth:

> At the completion of the Merger, the Peck Board will be expanded to add three directors who will be designated by Sunworks' Board, which is expected to include Daniel Gross, Rhone Resch and Judith Hall. In addition, it is possible that certain officers of Sunworks may continue their employment with Peck after the Merger.

*Id*. at 143.  The Proxy Statement fails, however, to disclose the specific details of all employment and retention-related discussions and negotiations that occurred between Peck and Sunworks executive officers and directors, including who participated in all such communications, when they occurred and their content.  The Proxy Statement further fails to disclose whether Peck's proposals mentioned management retention in the combined company and compensation and benefits programs applicable to the executive officers of the surviving company.

42.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

43.     The omission of this material information renders the statements in the "Opinion of Sunworks' Financial Advisor," "Background of the Merger" and "Interests of Sunworks' Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

44.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Sunworks will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

45. Plaintiff repeats all previous allegations as if set forth in full.

46. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

47. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's and Peck's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by HCVT, and HCVT's and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

48. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

49. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

50. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

- 13 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

# COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

51. Plaintiff repeats all previous allegations as if set forth in full.

52. The Individual Defendants acted as controlling persons of Sunworks within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Sunworks, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

55. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Sunworks' stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Sunworks, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Sunworks stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: October 23, 2020

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
      -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*